Samsung Electronics Co., Ltd. Samsung Electronics Co., Ltd. Home Semiconductor Corporation v. Samsung Electronics Co., Ltd. Good morning, Your Honors. May it please the Court. This morning, unless the Court would otherwise prefer, I intend to primarily address two points from the Board's decision. The first is its construction of the Wearing Clause, which is also referred to as the at-the-same-time limitation. And the second one is the Board's contingent finding, found in the opinion 42 to 44, regarding the obviousness of the claim process, assuming that our construction is considered. If time permits, or if the Court has questions, I'll address the remaining two claim construction issues, but that's my plan for the day, unless the Court has questions and would prefer otherwise. With respect to the first point, Your Honors. Claim construction is awfully important here. Indeed it is, Your Honor. Claim construction is almost always important. The Court construed the claim to mean no more than making a hole. Correct. And we would disagree with that finding, Your Honor. We think that the proper construction of the term removing encompasses more than just making a hole. When you look at it in the context of the specification 244 patent, which describes a removing process where the top portion, and I'm known for my food analogies, takes a layer, like a layer frosting up the cake, off the top of the wafer, exposing, flattening it so that you can put the resist on, and exposing the top of the third layer on the gate. And that's the removing portion, that's the top portion, and that is what's being removed, and that is consistent with the way the 244 patent. There is nothing in the 244 patent that suggests that poking a hole is any sort of appropriate meaning for that term. Indeed, the specific methods of planarization that are disclosed would not form a hole. You can't, for example, use chemical mechanical polishing to form a hole in a very small place. It is something that goes away for a while. On this one, I've got a bit of a problem because I'm trying to understand what it is you're really proposing for the claim of construction, because you say you're not really proposing planarized per se, that it's something else. It may not be poking a hole, you say, but it doesn't have to be planarized, so what does it have to be? It is, for example, probably best thought of as a species of planarization where the top level is removed. There are different types of techniques for planarizing, and these are reflected in our briefs, for example, at 28, and in the Nakamura reference at column 10, such as BPSG reflow. That's a technique where it's a glass, and you heat it, and it spreads out and planarizes, but you're not removing anything from the… Usually, we have presented to us the claim construction that was adopted by the board or the lower court, and an alternative claim construction, and your alternative claim construction is squishy. I mean, everything in the intrinsic evidence uses the term planarized, but you walk away from that. You say, no, it doesn't have to be planarized, but it has to be something more than punching a hole, so what more? I mean, we can't just say this claim construction was wrong without saying what the correct claim construction is. It's removing a top portion to form a planar surface. I'm trying to avoid the magic word planarized here because it forms a planar surface, but as I just explained, it is possible to form a planar surface without removing material from the top, and so this is forming a planar surface, planarizing, by removing as opposed to forming a planar surface by removing. So how does the removing occur? The removing occurs as described in the 244 patent, for example, by chemical mechanical polishing. It's basically you sand, for lack of a better term, the top of the wafer so it is flat, and so it's a physical process that smooths the top of the wafer and prepares it for the next step, in this case, the formation of the resist mask, which is then used for successive steps. How is that different than planarization? So planarization can form a flat surface. We go back to the BPSG reflow. That forms a flat surface, and you can put a mask on top of it, but it doesn't remove anything, and so it's admittedly a fine distinction, but that's the distinction we're on. And either way in the claim construction, why doesn't Nakamura render the claims obvious? So Nakamura does not render the claims obvious because the combination the board relied on, taking what I'll call the drilling step from Nakamura's first embodiment and using it with the planarization steps of Nakamura's third embodiment, is directly taught against by Nakamura. The whole point of Nakamura's third embodiment is to solve a depth-of-focus problem that is created by the first embodiment, and so it sort of stands logic on its head to say the first embodiment creates a problem, and that is a problem of depth-of-focus, and as you get smaller and smaller, this will become more of an issue, and so we've come up with another way to do it, and the other way to do it is not to do the process that is taught in embodiment one of Nakamura, but the way is to, instead of doing a single-step etch, a three-step process is performed. First, there is an etching that removes part of the fourth dielectric layer and exposes what in the 244 patent parlance is the third dielectric layer. Then there is a second separate process where the mask is removed. Then there is a third process where further etching takes place, and it is designed to remove the remainder of the fourth dielectric that was under the mask as well as the third dielectric layer, and this exposes the substrate and this forms the sidewall, and the point of this is to create a substantially planar surface, and you see this, Your Honor, in Figure 6 of Nakamura. My problem with the discussion of Nakamura is that we only have to find that there was substantial evidence to support the Board's factual findings on Nakamura. While you describe Samsung's testimony on this or showing on this as a conclusory, there are about 10 pages of figures and diagrams and discussion of it in the record. So what else would you say could lead us to the conclusion that there was just simply no evidence to support what the Board did? I think, Your Honor, there are two aspects to that. One is the factual findings, and there are about six pages in Dr. Rublev's declaration which purport to provide evidence about this, but what it boils down to is this formula of unknown providence that's not in Nakamura, this X minus T is greater than T, which is sort of pulled out of thin air in the reply declaration, and he thus declares that there would be no depth of field problem in that scenario. But there's also, I mean, we have to get to the ultimate conclusion of obviousness. It's the scales, as Judge Moore was talking about in the previous argument, where you take everything together and you reach a conclusion of obviousness, and we would submit, Your Honor, that if you accept our claim constructions, that whole overall balance of obviousness doesn't work because it's not consistent with the specific examples of Figure 3. And we do have to accept at least two of your three, right? So for Claim 16, there are two separate groups of claims. There's Claims 1 through 15, where for us to prevail, you have to accept all three of our claim constructions. Then there are Claims 16 through 20, and for that, the only claim limitation that's disputed is the wearing clause. Claim 16 uses the term planarized, so there's no dispute as to whether planarization occurs, Your Honor. And the Board made no findings and made no claim construction about the order of steps argument that was the other claim construction issue for Claims 1 through 20. So it's at the same time issue that you're pointing to? Yeah, at the same time, or the meaning of the wearing clause for Claim 16 is the only claim construction term that is issued. So yes, for 1 through 15. Part of your problem is that even if I agree with you on your claim construction, say I agree with you on both the at the same time and the order of the steps, in both cases, the Board went ahead and made alternative fact findings under your construction as well and concluded that it nonetheless caused you to fail in this case. So can you address what's wrong with those alternative fact findings that are specifically applying your claim constructions? I believe I was attempting to explain that in response to Judge O'Malley's earlier questions. But what's wrong with them is that the formula, x minus t divided by, is greater than t, which sort of is the hat that everybody is hanging the conclusion on, is nowhere to be found in Nakamura. And from there, you have to consider the specific teaching, if you go back to the specific teaching of Nakamura, Embodiment 3, which is found in Columns 13-19, which states that there's a problem with Embodiment 1. And the problem with Embodiment 1 is when you do this single drilling step in Embodiment 1, you have a depth of focus problem. You're making a great argument. And if we had de novo review, I would find it very appealing. But the Board pointed to at least two motivations to combine, citing their expert, Samsung's expert. The motivations were to reduce the time necessary to complete the etching process and to eliminate the need to transport the substrate between different tools. And those were the motivations to combine the first embodiment in Nakamura and the third embodiment in Nakamura. I may actually agree with you if this were de novo. But even if I did, it's not. I have to give deference. This is a fact-finding. There's expert testimony on it. It doesn't seem to me to be something I can say is not supported by substantial evidence. I mean, what are your thoughts on that? Because it seems to me you're arguing the other side, but I don't get to do this de novo. You have to kind of tell me what's wrong with what the Board did find. So the first aspect of it, the reduced number of steps, that comes from the citation that the Board relied on. It comes from Column 10 of Nakamura, which is the description of Nakamura Example 1. And so, yes, the benefit of Nakamura Example 1 is that it has fewer steps. But that benefit comes with a problem, and that problem is what is being solved in Nakamura Example 3. So I don't think it's fair to say that that truly supports the combination. With respect to the, you know, we don't have to use as many tools, there's nothing about that in Nakamura. That's just sort of the abstract unsupported statement. And so I would say that— Well, you said the abstract unsupported statement. Isn't it the case that Samsung's expert made that statement? He said that, yes. Okay, but that's evidence. So it's not unsupported. It is, in fact, supported by evidence. So, yeah, Dr. Rubot did say that. I see I'm in my rebuttal time, so unless there are further questions. We will save it for you, Mr. Kaufman. Thank you very much, Your Honor. Mr. Countryman. First question, what are the odds of two lawyers coming before us in the same case, both of whom are named Craig? Very low, Your Honor. But it appears to have happened. May it please the court. There are multiple independent bases on which this court should affirm the board's obviousness determination. First, the board correctly construed the at-the-same-time limitation, and HSC does not dispute that the claims are obvious under the board's construction of that term, regardless of how the other two terms are construed. So if the court is to affirm on that construction, it's game over. The claims are obvious. Well, I mean, at the same time, I mean, you do have at least the grammatical question as to how the language is set up. I mean, I see your argument and the board's argument as to you could read it as only modifying one portion of that phrase, but you're missing a comma, aren't you? We don't think so, Your Honor. All three of the parts of that phrase are set off by commas. And so when you look at the third part, the wherein spacers are formed on sidewalls at the gate electrode structure at the same time, that part is set off by a comma from the other two parts. And so then the question becomes, well, is there anything to link that latter language to the earlier language? And there isn't. There's no explicit reference back that would require that the spacer formation and, you know, And then you just have the grammatical principle of the last antecedents rule, the presumption that basically where you have a modifying phrase like at the same time, the presumption is that it just refers only to the most immediate thing that comes before it. So here, the formation of the spacers, and that it does not also refer back to either exposure of the substrate or removal of the fourth dielectric layer. So we think the grammar supports what the board did. And then you also have to bear in mind that this is more under the broadest reasonable interpretation. So to the extent there's any ambiguity between the two constructions, certainly the board's construction was reasonable. And because it was a broader one, it would also be the appropriate one in this context. The other issue is that the specification suggests that the at the same time modifier just modifies the formation of the spacers. And particularly it's figures four and five in the specification, which are shown in annotated versions at page 33 of the red brief. And the problem is that when you remove the relevant portions of the fourth dielectric layer, those entire relevant portions of the fourth dielectric layer are removed before either the substrate is exposed or the spacers are formed, because you still have the third dielectric layer in there. And so the specification is showing that spacer formation doesn't happen at the same time as the removal of that fourth dielectric layer, which is another piece of evidence in support of the board's position. So that's one independent basis for the board's decision. But the other, and we would submit perhaps the most straightforward, is that the board made an alternative factual finding. That even if you adopt all three of HSC's constructions, the board found that there was a motivation to combine aspects of Nakamura's first embodiment with aspects of Nakamura's third embodiment. And that that resulting combination would yield all the limitations of the claim process and would have been obvious. And as George Moore alluded to, the board gave specific reasons for that finding. Simplification of the process, reduction of costs. Those reasons were both well supported by the testimony of Samsung's expert. The board also addressed this depth of focus issue and determined that... But your friend on the other side, your Craig on the other side, focused in or honed in on the fact that in fact your expert had some contradictory statements on these very things. Not on the motivation to combine question, your honor. On the motivation to combine question, our expert's testimony was consistent throughout. That there was a motivation to combine. That the combination had these two benefits. That those benefits outweighed the drawbacks. I think there were some comments on one of the claim construction issues about some conflicting testimony. And ultimately the board, because that was extrinsic evidence on the claim construction issue, the board didn't really need to deal with it one way or the other because the intrinsic evidence was clear. But on the motivation point, our expert was consistent throughout. And as was noted in the earlier colloquy, our expert provided a dozen pages of testimony. Explaining the benefits of the combination. Explaining that those benefits outweighed any drawbacks, any loss of depth of focus. And our expert was very specific on this. He identified, for example, that there were particular applications where the benefits of simplification and cost reduction would be more important than any loss of depth of focus. What's your response to the argument that Nakamura didn't really have these mathematical tables that your expert relied upon? In other words, he used a formula, but the formula didn't actually come out of Nakamura. So the expert did use Nakamura's figures, and what the expert was doing with that formula was explaining the teachings of Nakamura through those figures. So certainly it's true that the formula doesn't appear in Nakamura, but the expert got that formula by using things that do appear in Nakamura, the figures in Nakamura. And what he was using with that formula was explaining the conditions under which the depth of focus of the combined embodiment would be better than embodiments like Nakamura's second embodiment. The Nakamura, it says, are acceptable ways to practice the invention. And ultimately that's a factual issue about how one of skill and the art would interpret Nakamura. Our expert explained that his view of how one would interpret it, use those formulas as a demonstrative. HSC had nothing, or in this court anyway, presents nothing on the other side. They're not pointing to contrary testimony from their expert. It's just pure attorney argument about formulas. And so the board was certainly justified in crediting Samsung's expert over attorney argument. And again, the point of those formulas was to show that the reduction in depth of focus was not as severe as suggested by HSC. The expert also explained that just on this overall weighing of benefits and costs, that for some applications like high throughput, simplicity and reduction of costs are much more important than any loss of depth of focus. And he also explained that there are particular things you can do to compensate for a reduction in depth of focus. You can use certain specialized masks. You can use optical proximity correct. And the cost of those workarounds for any reduction in depth of focus would still be less than the cost you would save from the combined process. And so the expert explained all that. The board credited all that testimony, made very detailed factual findings, cited the dozen pages that our expert provided on that. And the board's factual finding on that was well supported by substantial evidence. And given that there is this factual finding of motivation to combine, the legal conclusion of obviousness was correct. And so on either of those independent bases, either the at-the-same-time limitation or the board's alternative factual finding, the board's decision should be affirmed. Unless the court has questions on the other two issues, we rest for briefs on those. I actually do have a question. Have you ever found a case where there are seven separate steps and five of them have to be performed in order, but the two in the middle could be claimed to be flopped back and forth? I haven't seen that case. Me neither. And I've never seen anything even close to that. And usually every case I've seen, it's are these claim steps meant to be performed in order or not. And it seems quite unusual to recognize that many of these claim steps have to be performed in order, but to conclude that somehow two of them in the middle could be flip-flopped either direction. Right. I understand the board made an alternative fact finding in your favor, even if you're wrong on that, which is probably a good thing. Well, a couple of things on that. So the presumption is, of course, you can flip-flop the steps, and it goes to the other side to show that there's something either in the claim language or in logic that requires them to be performed in a particular order. And there is here, as the board acknowledged, there is stuff in the claim to show that many of these steps have to be performed in a particular order. Well, many of the steps. But that's the key, I think, is for a lot of these other steps, you have language in there particularly saying, perform these steps sequentially or two consecutive steps. Isn't there also the word next in the specification? That's in the specification, but it's not in the claim. And so that's also significant, that to the extent the patentee wanted to limit the claim in the same way that he had limited the specification, he should have put that language in the claim. So here you have the other claim steps that have to be performed in a particular order where there is limiting language saying, perform these steps consecutively or sequentially. But then for these two steps in the middle, there's no such limiting language. And so the conclusion that derives from that is they aren't limiting. You can perform them in either order. And again, we're dealing with the broadest reasonable interpretation. And so given the presumption, you can flip the order and the lack of limiting language in the claim and the fact that there's— No, you can't say lack of limiting language in the claim. Lack of limiting language in the particular elements because if he agrees, there's definitely limiting language in the claim. Correct. Lack of limiting language for these two particular elements. And you also have the fact that logic doesn't dictate that they must be performed in a particular order because Nakamura performs them in a different order. So unless the court has further questions, we ask you to affirm. Thank you, Mr. Countryman. Mr. Kaufman has almost three minutes. Thank you, Ron. I'd like to go ahead and address a couple of the issues that Mr. Countryman addressed and respond to a couple of things. The first point relates to his discussion of construing the wearing clause and his argument that somehow the claim language doesn't support the idea of accomplishing all three results as part of the same process. It's clear from the claim language that all three results must be obtained as part of the same process because it says forming the spacer, forming the trench, and exposing the substrate. And the only way that that happens is if the third dialectic is removed. Moreover, and that's consistent with the specification, and moreover, it's consistent with the testimony of their expert, Dr. Rubloff, who testified on cross-examination that yes, all three of these steps have to be performed as part of that process. Turning secondly to the overall question of obviousness, he not surprisingly spent a lot of time focusing on the formula, but at no time did he ever point to any location in Nakamura for the formula because there is no such location in Nakamura and it's not there. And finally, with respect to the flip-flopping of the order of the steps, the last issue that you all were discussing with him, while the word next does not appear in the claims for these two limitations, the specification makes it clear that they must be performed in this order, and also logic makes it clear that they must be performed in this order because if you were going to put a mask on a surface, you can't then planarize or remove the top because you're going to take the mask away with it. And since the purpose of the mask is to let you then perform the subsequent steps, if you first put the mask on and then remove or planarize, you're going to remove your mask. Even Dr. Rublev in his cross-examination testified that he couldn't think of a way that you could have a mask that would withstand, for example, chemical and mechanical puncture. So if there are no further questions. Thank you. Mr. Kaufman, we'll take the case under advisement.